# Richmond

STEWART W. NEWSOM v. COMMONWEALTH OF VIRGINIA.

March 6, 1967.

Record No. 6333.

Present, All the Justices.

*Sidney L. Berz*, for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

GORDON, J., delivered the opinion of the court.

On April 10, 1953, the Hustings Court of the City of Richmond, Part Two, convicted Newsom of first degree murder and sentenced him to life imprisonment in accordance with the jury verdict. Almost twelve years later, the United States Court of Appeals for the Fourth Circuit held that Newsom had been denied counsel to prosecute an appeal and, therefore, deprived of his constitutional rights.[1] It directed Newsom's release from custody by the Virginia authorities unless Newsom should be granted a retrial or this Court should hear an appeal from the April 10, 1953 conviction order. *Newsom v. Peyton*, 341 F.2d 904 (4th Cir. 1965).

In view of the mandate of the federal Court of Appeals, we granted Newsom leave to apply for an appeal to this Court. We directed the Hustings Court to appoint counsel for Newsom, and we prescribed that the time for taking any action necessary to perfect the appeal should be computed from the date of appointment of counsel, rather than from the date of the conviction order (April 10, 1953).

The Hustings Court appointed counsel for Newsom on May 17, 1965. Counsel filed a petition for appeal and took the other necessary action to bring the case before us. By order entered January 18, 1966, we granted Newsom an appeal from the conviction order of April 10, 1953.

The evidence, as set forth in the narrative statement before us, amply supports Newsom's conviction of first degree murder. In fact, Newsom's counsel has not contested the sufficiency of the evidence. And he has assigned only one error allegedly committed by the court during the murder trial: "Failure of the Court to have the proceedings transcribed or recorded so that the defendant would have an accurate record of the evidence".

---

(1) The same court found no merit in Newsom's earlier petition seeking release or retrial on other grounds. *Newsom v. Smyth*, 261 F.2d 452 (4th Cir. 1958), *cert. denied*, 359 U.S. 969, 79 S.Ct. 883, 3 L.ed.2d 837 (1959).

The proceedings at Newsom's murder trial were not recorded. Shortly after his trial, however, a narrative statement of the testimony and incidents of trial was prepared. This narrative statement, which was headed "Certification of the Evidence and Incidents of the Trial", was signed by the Commonwealth's attorney who prosecuted Newsom, by Newsom's retained counsel who defended him at the trial, and by the trial judge. It was filed in the clerk's office of the Hustings Court on September 24, 1953, with a notation by the trial judge that he had written part of the narrative statement on the day after the trial (April 11, 1953) and counsel had supplied the balance.

After the Hustings Court appointed appellate counsel for Newsom on May 17, 1965, the Commonwealth's attorney gave notice to Newsom's court-appointed counsel, as well as to retained counsel who had represented him at the murder trial, that he would tender to the trial judge on July 14, 1965 "a transcript of the evidence in this case [Commonwealth v. Stewart W. Newsom] as it now appears in the files of this case for certification to accompany any other papers that may be presented to the Supreme Court of Appeals of Virginia". On July 14, 1965, the trial judge certified the "Certification of the Evidence and Incidents of the Trial" that he had previously signed and had been filed in the clerk's office on September 24, 1953.

The trial judge recited in his certificate of July 14, 1965 that Newsom's court-appointed counsel objected to the certification of the narrative statement because he did not know what happened at the trial and "the original certification appears not to have been made until September 24, 1953". The judge also recited in the certificate that Newsom's retained counsel (who had represented him at the murder trial and were given notice that the judge would be requested to certify the narrative on July 14, 1965) "offer[ed] no corrections at this time".

█ As already noted, Newsom's counsel assigned error to the failure of the court to have the proceedings of the 1953 trial transcribed or recorded.[2] But as pointed out by the Supreme Court of the United States: "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's conten-

(2) A Virginia statute now requires the recording of the evidence and incidents of trial by a court reporter or by a mechanical or electronic device in all felony cases. Va. Code Ann. § 17-30.1 (Supp. 1966). There was no such requirement in 1953, when Newsom was tried.

tions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript." *Draper* v. *Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 779, 9 L.ed. 2d 899, 905 (1963).

Our Rule 5:1 § 3 provides alternate methods for making the evidence and other incidents of trial parts of the record for the purpose of appeal: the trial judge may certify the reporter's transcript or a narrative statement. In this case, the trial judge certified a narrative statement on July 14, 1965, thereby declaring it to be authentic. Newsom's retained counsel approved the narrative in 1953 and offered no correction when it was certified by the judge on July 14, 1965. Newsom's court-appointed counsel has brought forth no reason why we should conclude that the narrative is inaccurate or incomplete.

■ Newsom's counsel contends we cannot hear this appeal for lack of a transcript or statement of the evidence "lawfully" before us and, therefore, should release Newsom or grant him a new trial. The narrative statement in the record is not lawfully before us, counsel argues, because the trial judge did not certify it within 70 days after April 10, 1953 (the date of the conviction order), as required by our Rule 5:1 § 3.

But Newsom persuaded the federal Court of Appeals that Virginia had denied him counsel to seek an appeal from the conviction order (*Newsom* v. *Peyton, supra*); and in view of the mandate of that Court, we directed the appointment of counsel and suspended the time requirements of our Rules to permit the prosecution of an appeal. Newsom will not be permitted to probate and reprobate. He cannot complain that he was denied his constitutional right to counsel to prosecute an appeal and, after we have provided for appointment of counsel and permitted him to prosecute a late appeal, contend that we cannot suspend our Rules to permit the appeal.

■ Newsom assigned one other error: the failure of the trial court to appoint counsel to assist him in prosecuting an appeal within a reasonable time after his conviction. In arguing this assignment of error, counsel contends that Newsom has been denied his rights as guaranteed by § 8 of the Constitution of Virginia and the Sixth Amendment to the Constitution of the United States. Section 8 of the Constitution of Virginia guarantees, in criminal prosecutions, the right "to a speedy trial by an impartial jury". The Sixth Amendment

to the Constitution of the United States guarantees: "In all prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . ."

Counsel argues that these constitutional provisions guarantee a speedy appeal. He cites no authority, however, to support this argument. And these provisions by their terms relate to prosecutions in trial courts, and not to appellate proceedings. We do not reach therefore the question whether the speedy trial provision of the Sixth Amendment is applicable to the states through the Fourteenth Amendment.

*Affirmed.*