THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY WILLIAMS, Defendant-Appellant.

(No. 53919;

First District—February 10, 1971.

James B. Haddad, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Anthony Williams, appeals from a jury verdict and judgment of the Circuit Court of Cook County, wherein he was found guilty of attemted aggravated kidnapping of a nine year old girl and sentenced to the Illinois State Penitentiary for not less than seven nor more than twenty years.

On February 26, 1968, about 7:00 A.M., Annette Ambrose, a nine year old Caucasian girl, was walking north on the west side of Rockwell Street just north of 45th Street in Chicago, on her way to school. A stranger (later identified as the defendant herein) grabbed the girl from behind and began to carry her across the street toward an automobile, a 1968 Oldsmobile with license No. 911-508. She struggled and managed to escape when a motorist traveling north on Rockwell, Donald Schimek, drew near and stopped his car. Miss Ambrose ran away, and the man, a Negro, about twenty-one years of age, climbed into his car and drove off. Schimek followed him for a short time, noticed the license number of the car, and then stopped to find out what had happened. Miss Ambrose had run to a woman working in her yard nearby, and when Schimek asked the woman "if anything was wrong," the woman told him the Negro man had tried to kidnap Annette. Schimek gave a description of the man to the police and the license number of the automobile. Miss Ambrose also gave a description of her assailant to the police.

On March 1, 1968, a Robbins police officer found the defendant asleep in a 1968 Oldsmobile bearing license No. 911-508. The car had been stolen on February 25. Defendant was arrested and taken to the Blue Island police station and later transported to a Chicago police station in connection with the Annette Ambrose case by Officer William O'Connor of the Chicago police. On the same day, the Chicago police conducted a lineup with seven participants. Miss Ambrose identified the defendant,

as did Mr. Schimek. Officers O'Connor and Richard Bedran, who conducted the lineup, did not advise the defendant of his right to be represented by an attorney at the lineup. Defendant claims the trial court erred in allowing the identifications into evidence because the defendant was not represented by an attorney at the lineup, arguing that *United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263 (1967), endow the defendant with an absolute right to counsel at a lineup proceeding. The defendant overlooks the fact that in both the *Gilbert* and *Wade* cases the lineup was held after the defendant was indicted. In the instant case the defendant had not yet been indicted, and this distinction was drawn by our Illinois Supreme Court in *People v. Palmer*, 41 Ill.2d 571 (1969), where the court said (p. 572):

"Each of those cases involved a lineup proceeding which was conducted after the defendant had been indicted and after counsel had been appointed for him. In each case the defendant's attorney was not notified of the lineup and was not present. The Supreme Court held that the lineup was a critical stage of the proceedings and that defendant was entitled to the presence of counsel. In our opinion these 'lineup' decisions apply only to post-indictment confrontations. We reach this decision because of the language of the United States Supreme Court in these cases and in the subsequent case of *Simmons v. United States*, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967."

The court further said (pp. 572-573):

"In *Wade*, the court stated that the question was 'whether courtroom identifications of an accused at trial are to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel.' (388 U.S. at 219, 18 L.Ed.2d at 1153, 87 S. Ct. at 1928.) In *Gilbert* the court summarized its decision in *Wade* as follows: 'We there held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup.' (388 U.S. at 272, 18 L.Ed.2d at 1186, 87 S. Ct. at 1956.) In *Simmons* the court in referring to the 'lineup cases' stated 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the prosecution", and that a post-indictment lineup is such a "critical stage." ' 390 U.S. at 382, 19 L.Ed.2d at 1252, 88 S. Ct. at 970."

In *People v. Cesarz*, 44 Ill.2d 180 (1970), the court reaffirmed the conclusion it reached in *Palmer* (p. 184):

"As we pointed out in *People v. Palmer*, 41 Ill.2d 571, the *Gilbert* decision applies only to post-indictment confrontations and the rule requiring automatic exclusion because of the absence of counsel is not applicable here."

The trial court in the instant case was correct in its ruling.

Defendant was indicted in the following language, in part:

"He, with the intent to commit the offense of aggravated kidnapping, attempted to knowingly and secretly confine Annette Ambrose, a child under the age of thirteen years, by putting said Annette Ambrose into an automobile, in violation of ch. 38, par. 8—4 of the Illinois Revised Statutes, 1967."

A written motion was made to suppress the identification, stating:

"The identification by the witness was induced by actions of the police. The Manner in which the police acted directly caused the identification witness to point out the defendant in violation of his constitutional rights under the Fifth and Fourteenth Amendments of the Constitution of the United States."

At the hearing on the motion to suppress, there was no evidence to support this allegation. The defense attorney was precluded by objection of the State from going into the question of the witnesses' opportunity to observe who grabbed Miss Ambrose.

The defendant relies on *Stovall v. Denno*, 388 U.S. 293 (1967), and *Simmons v. United States*, 390 U.S. 377 (1968), both of which go to the unnecessarily suggestive and conducive conduct of the police to cause irreparable mistaken identification, thus denying the defendant due process of law. Such conduct was not shown in this case, and *Stovall* and *Simmons* do not apply; neither does *People v. Robinson*, 46 Ill.2d 229 (1970).

The question of prior opportunity to observe is not an issue on a motion to suppress once it has been shown that the confrontation is not an abridgement of the accused's constitutional rights. The opportunity of the witness to observe at the time of the crime is then only relevant to the issue of his credibility and is a subject appropriately pursued only at the actual trial of the cause. *People v. Sutton*, 110 Ill.App.2d 232 (1969); *People v. Morgan*, 121 Ill.App.2d 196 (1970).

Defendant complains that the indictment is fatally defective because it does not recite "against the will" of the confined person (Ill. Rev. Stat., ch. 38, par. 10—1(a)). This element may be implied in the case of a child under thirteen years of age if the confinement is without the

consent of the parent or guardian (ch. 38, par. 10—1(b)). Defendant argues the indictment does not charge attempted confinement either against the will of Annette Ambrose or without the consent of her parent or guardian, and it is therefore fatally defective, but is unable to cite any Illinois authority to support his position. In *People v. Landis,* 66 Ill.App.2d 458, 463 (1966), the court, in upholding a conviction for kidnapping, noted that "the gist of the kidnapping" is "secret confinement." In the instant indictment defendant was charged with having attempted to "knowingly and secretly confine" the victim. It is well-established law in this state that the sufficiency of an indictment will be tested by the standards as stated in *People ex rel. Miller v. Pate,* 42 Ill.2d 283, 285 (1969):

"The tests respecting the sufficiency of an indictment, repeatedly enunciated in the case law, are whether it would enable defendant to prepare his defense and whether it would sustain a plea of judgment in bar of any further prosecution for the same offense. *People v. Mills,* 40 Ill.2d 4, 11—12; *People v. Patrick,* 38 Ill.2d 255, 258; *People v. Bonner,* 37 Ill.2d 553, 562; *People v. Blanchett,* 33 Ill.2d 527, 532."

The defendant was made aware of the specific acts constituting the charge against him and the date and the place the offense was alleged to have been committed. It is obvious that a judicial determination of the defendant's guilt or innocence would act as a bar to subsequent prosecutions. The language of *People v. Grieco,* 44 Ill.2d 407, 411—412 (1970), is appropriate:

"A bill of particulars was available to him had he desired or needed more details and, as a practical matter, the record of the case demonstrates no difficulty in preparing and presenting a defense. Quite clearly, the indictment and the judgment entered upon it are sufficient to support a plea of double jeopardy should the need arise."

The defendant herein, Anthony Williams, through his attorney, contended at the trial that he was not the man who grabbed Miss Ambrose and attempted to kidnap her, and that it was a case of mistaken identity. Defendant exercised his constitutional right and did not testify. There was no issue here as to whether nor not it was without her parents' consent because she was under thirteen years of age. This case can be readily distinguished from the recent opinion of our Illinois Supreme Court in *People v. Robert Steven Marin, et al.,* decided January 26, 1971, wherein an issue was made of the question of consent of the parents of a boy under thirteen years of age. Parental consent was the defense raised by the defendants, claiming it was with the consent of the father, who was accused by them of being a co-conspirator in the kidnapping. The case was reversed because of this contention and erroneous instructions

given the jury on that question. Such is not the case herein, the sole question being the sufficiency of the indictment, which we hold to be sufficient.

Defendant further complains that he was denied a free transcript of the pre-trial hearing on his motion to suppress the identifications. He claims he wanted a transcript for use at the trial for impeachment purposes, and that such denial of his motion was error under *Griffin v. Illinois*, 351 U.S. 12 (1956), and *Roberts v. LaValle*, 389 U.S. 40 (1967). To meet the requirements of the *Griffin* case, the Illinois Supreme Court promulgated a rule in effect at the time the defendant moved for a free transcript of his hearing on his motion to suppress:

"(b) Report of Proceedings. In all cases in which the defendant is convicted of a felony and in all cases in which a sentence of death is imposed, the defendant may petition the court in which he was convicted for a report of proceedings at his trial. * * *." (Ill. Rev. Stat. 1967, ch. 110A, par. 607(b).)

The foregoing rule does not provide for a free report of proceedings other than at his trial. In *People v. Hubbard*, 107 Ill.App.2d 79 (1969), the court said (p. 82):

"The LaValle decision is inapplicable to the instant case because there is no such statute in Illinois which provides for the furnishing of a preliminary hearing transcript for a fee or otherwise. An Illinois Supreme Court Rule (Ill. Rev. Stat. 1965, ch. 110, par. 101.27(9)(b)) provides only for a transcript to be furnished an indigent of the proceedings of the trial in which the indigent was convicted."

The defendant further complains that the State failed to prove him guilty beyond a reasonable doubt. The principal complaint is that the witnesses in giving the description of the assailant to the police shortly after the incident said the assailant was thin, and that the report of the court's psychiatrist described the defendant as five feet, ten, and weighing 215 pounds. Discrepancies in descriptions given in the police report and on trial are questions for the jury to decide. (*People v. Green*, 56 Ill.App.2d 86 (1965); *People v. Thomas*, 69 Ill.App.2d 113 (1966).) The jury heard the testimony of the witnesses and had an opportunity to determine their credibility. After a full and complete review of this record, we think the defendant was proven guilty beyond a reasonable doubt.

For the reasons stated herein, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO, P. J., and BURMAN, J., concur.